STATE OF CONNECTICUT *v.* JASON GONZALEZ
(AC 32805)

DiPentima, C. J., and Alvord and West, Js.

Argued January 17—officially released April 24, 2012

*Glenn W. Falk*, special public defender, for the appellant (defendant).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Richard Colangelo*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Jason Gonzalez, appeals from the judgment of conviction,[1] rendered after a jury trial, of manslaughter in the first degree with a firearm as an accessory in violation of General

---

[1] The defendant also was convicted of criminal possession of a firearm in violation of General Statutes § 53a-217 and carrying a pistol without a permit in violation of General Statutes § 29-35 (a). The defendant does not challenge his conviction of these counts on appeal.

Statutes §§ 53a-8[2] and 53a-55a.[3] On appeal, the defendant claims that the evidence at trial was insufficient to support the jury's verdict.[4] Specifically, the defendant argues that there was insufficient evidence that the defendant solicited, requested, commanded, importuned or intentionally aided the principal.[5] We reverse in part the judgment of the trial court.

Only two witnesses who were at the scene testified at trial. First, Kenny Jackson testified that on the evening of December 25, 2007, he was celebrating Christmas with friends in a third floor apartment located in Building 13 of the Roodner Court housing complex in Norwalk. Jackson and his friends were drinking alcohol, and at approximately 9 or 10 p.m., he went down to the first floor of the building to purchase marijuana and crack cocaine. When Jackson arrived downstairs, he encountered Donald Wilson, the defendant and some women. Jackson testified that he asked the men,

---

[2] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[3] General Statutes § 53a-55a (a) provides in relevant part: "A person is guilty of manslaughter in the first degree with a firearm when he commits manslaughter in the first degree as provided in section 53a-55, and in the commission of such offense he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm. . . ."

General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . ."

[4] The defendant also claims that prosecutorial impropriety in closing argument deprived him of a fair trial. Because we conclude that the evidence was insufficient to support the jury's verdict, we do not address this claim.

[5] The defendant also argues that there was insufficient evidence that he intended to cause serious physical injury to the victim. Because we conclude that there was insufficient evidence that the defendant solicited, requested, commanded, importuned or intentionally aided the principal, we do not address this claim.

"[w]ho's straight?" meaning that he was looking to purchase drugs. Wilson told Jackson that he had drugs to sell. Wilson and Jackson went upstairs to the second floor of the building to conduct the transaction.

On the second floor, the victim was also celebrating Christmas with his family in his mother's apartment. After learning about the drug transaction going on in the hallway, the victim came out of the apartment into the hallway. Jackson testified that the victim then gave Jackson and Wilson a look signifying his disapproval of the transaction. Jackson and Wilson returned downstairs to the first floor. The victim followed them downstairs and gave them another disapproving look. Jackson told Wilson that they should wait until the victim left before conducting the transaction.

Jackson then testified that the victim then began walking toward the front door of the building, followed by Jackson and Wilson. The defendant was in the hallway near the front of the building. As the victim walked out of the building, the defendant said, "Merry Christmas." When the victim did not respond, the defendant called him an "asshole." The victim reentered the building and asked the defendant what he had said to him. In an attempt to calm the situation, Jackson told the victim, "[the defendant] didn't say anything to you." The defendant then pulled out a gun and said, "Yeah, I didn't say anything. I didn't say anything to you." The victim grabbed the gun, and he and the defendant began to struggle for control of the weapon. Jackson fled the scene.

The second witness was Frederick Paulk, the victim's brother (Paulk), who testified that he heard gunshots a couple minutes after the victim left the second floor apartment. Paulk exited the apartment and looked over the balcony, where he observed the victim and the defendant struggling. Paulk saw a woman holding the

defendant around the waist and telling him to stop. Then, Paulk observed Wilson pointing a gun at the victim. Paulk told Wilson to stop, saying, "[d]on't do it." The defendant and the victim broke loose from each other and the victim fell against a wall. Paulk saw Wilson shoot the victim and then back out of the building, using the defendant as a shield. Paulk did not observe anyone other than Wilson with a gun. Finally, Gerard Petillo, a forensic science examiner, testified that he was unable to determine whether the bullets recovered from the victim's body and from the crime scene were fired from the same firearm. He also testified, however, that one Glock semiautomatic firearm fired the shell casings that were recovered from the scene.

The defendant was arrested and, following a jury trial, he was convicted of manslaughter in the first degree with a firearm as an accessory in violation of §§ 53a-8 and 53a-55a. The court sentenced the defendant for his conviction of criminal possession of a firearm to five years to serve, two years of which was the mandatory minimum. The court sentenced the defendant for his conviction of carrying a pistol without a permit to five years to serve, one year of which was the mandatory minimum. The sentences for the conviction of criminal possession of a firearm and carrying a pistol without a permit were to run consecutively with each other, but concurrently with the manslaughter conviction. The court sentenced the defendant for the manslaughter conviction to a term of forty years to serve, five years of which was the mandatory minimum. Finally, the court imposed a sentence enhancement of five years for the commission of an A, B or C felony with a firearm in violation of General Statutes § 53-202k, which was to run consecutively to the previously imposed sentences. Thus, the court imposed a total effective sentence of forty-five years to serve, ten years

of which was the mandatory minimum. This appeal followed.

The defendant claims that the evidence at trial was insufficient to support the jury's verdict of guilty of manslaughter in the first degree with a firearm as an accessory. We agree.

"We begin by setting forth the appropriate standard of review. Appellate analysis of [a sufficiency of the evidence claim] requires us to undertake a well defined, twofold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty. . . .

"While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"[I]t is a function of the jury to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

Because [t]he only kind of inference recognized by the law is a reasonable one . . . any such inference cannot be based on possibilities, surmise or conjecture. . . . It is axiomatic, therefore, that [a]ny [inference] drawn must be rational and founded upon the evidence. . . . However, [t]he line between permissible inference and impermissible speculation is not always easy to discern. When we infer, we derive a conclusion from proven facts because such consideration as experience, or history, or science have demonstrated that there is a likely correlation between those facts and the conclusion. If that correlation is sufficiently compelling, the inference is reasonable. But if the correlation between the facts and the conclusion is slight, or if a different conclusion is more closely correlated with the facts than the chosen conclusion, the inference is less reasonable. At some point, the link between the facts and the conclusion becomes so tenuous that we call it speculation. When that point is reached is, frankly, a matter of judgment." (Citations omitted; internal quotation marks omitted.) *State* v. *Billie*, 123 Conn. App. 690, 695–96, 2 A.3d 1034 (2010).

In order to prove that a defendant is guilty of manslaughter in the first degree with a firearm as an accessory under §§ 53a-8 and 53a-55a, "the state must prove that the defendant, acting with the intent to cause serious physical injury to another person, *intentionally aided a principal offender* in causing the death of such person or of a third person, and that the principal, in committing the act, used, carried, or threatened to use a firearm." (Emphasis added.) *State* v. *Gonzalez*, 300 Conn. 490, 496, 15 A.3d 1049 (2011). "To be guilty as an accessory, one must share the criminal intent and community of unlawful purpose with the perpetrator of the crime and one must knowingly and wilfully assist the perpetrator in the acts which prepare for, facilitate

or consummate it. . . . Whether a person who is present at the commission of a crime aids or abets its commission depends on the circumstances surrounding his presence there and his conduct while there." (Citation omitted; internal quotation marks omitted.) *State* v. *Ashe*, 74 Conn. App. 511, 517, 812 A.2d 194, cert. denied, 262 Conn. 949, 817 A.2d 108 (2003).

"Since under our law both principals and accessories are treated as principals . . . if the evidence, taken in the light most favorable to sustaining the verdict, establishes that [the defendant] committed the [crime] charged or did some act which forms . . . a part thereof, or directly or indirectly counseled or procured any persons to commit the offenses or do any act forming a part thereof, then the [conviction] must stand. . . .

"To justify a conviction as an accessory, the state must prove both that the defendant had the intent to aid the principal and that, in so aiding, he had the intent to commit the crime. . . . Mere presence as an inactive companion, passive acquiescence, or the doing of innocent acts which may in fact aid the [principal] must be distinguished from the criminal intent and community of unlawful purpose by one who knowingly and willingly assists the perpetrator of the offense in the acts which prepare for, facilitate, or consummate it." (Citation omitted; internal quotation marks omitted.) *State* v. *Conde*, 67 Conn. App. 474, 484, 787 A.2d 571 (2001), cert. denied, 259 Conn. 927, 793 A.2d 251 (2002).

Here, there was insufficient evidence to prove beyond a reasonable doubt that the defendant solicited, requested, commanded, importuned or intentionally aided Wilson, the principal, in committing manslaughter in the first degree with a firearm. The state argues that the defendant was properly convicted upon sufficient evidence, both direct and circumstantial, and from the

"intricate chain of eminently reasonable and logical inferences flowing from the evidence." We disagree. The record is devoid of any evidence that the defendant solicited, requested, commanded, importuned or intentionally aided Wilson in the commission of the crime of manslaughter. Moreover, there were no facts before the jury from which it reasonably could have inferred that the defendant engaged in such conduct. The testimony adduced at trial indicated that the defendant pointed a gun at the victim, and the two then began struggling for the weapon. The record contains no evidence, however, as to how the gun came into Wilson's possession, nor any evidence of any conduct by the defendant which reasonably could be interpreted as assisting Wilson.

The state argues that Wilson and the defendant were associated in the drug trade, that the victim was interfering with a drug transaction and that the defendant aided Wilson in shooting the victim by "providing the weapon and introducing it into the situation." First, the only circumstantial evidence suggesting that the defendant was associated in the drug trade with Wilson was that they were together when Wilson told Jackson that he would sell him drugs and that the defendant possessed a gun and pointed it at the victim. The state cites cases reciting the well established correlation between drug dealing and firearms. See, e.g., *State* v. *Cooper*, 227 Conn. 417, 426 n.5, 630 A.2d 1043 (1993). We note, however, that this court has stated that in *Cooper* and cases like it, guns, or testimony about the presence of guns, were properly admitted into evidence because the evidence was "relevant and material for reasons *other than* a well established correlation between drug dealing and firearms." (Emphasis added; internal quotation marks omitted.) *State* v. *Mozell*, 36 Conn. App. 672, 676, 652 A.2d 1060 (1995); see id., 677–78 (court improperly admitted gun into evidence in absence of any evidence

tying gun to alleged conspiracy, but admission was harmless).

Moreover, the defendant's presence near Wilson at the time Jackson inquired about purchasing drugs is insufficient to establish his involvement in the transaction. See, e.g., *State* v. *Fair*, 118 Conn. App. 357, 362, 983 A.2d 63 (2009) (defendant's mere presence not enough to support inference of dominion or control for conviction of illegal possession of narcotics, but where other pieces of evidence tie defendant to dominion and control, finder of fact may consider presence and draw inferences from that presence and other circumstances linking defendant to crime); *State* v. *Madison*, 116 Conn. App. 327, 336, 976 A.2d 15 (presence in high crime area alone insufficient to establish reasonable and articulable suspicion for purposes of fourth amendment), cert. denied, 293 Conn. 929, 980 A.2d 916 (2009); *State* v. *Rodriguez*, 11 Conn. App. 140, 149, 525 A.2d 1384 (1987) (mere fact, without more, that person is associating with or in presence of others who are suspected of criminal activity does not establish probable cause to arrest or search that person).

Although the defendant brandished a gun at the victim, the evidence suggests that this event occurred independently of the drug transaction. There was no evidence that the defendant participated at all in the drug transaction. Jackson testified that the defendant said, "Merry Christmas," and the victim did not respond, which angered the defendant, prompting him to call the victim an "asshole." This exchange, in turn, led to the altercation between the defendant and the victim. The evidence suggests that the defendant and Wilson were associated with each other on the night of the shooting, but there is no evidence inviting a reasonable inference that this association was related to the drug trade. *State* v. *Green*, 261 Conn. 653, 672–73, 804 A.2d 810 (2002) (evidence insufficient to convict defendant

of conspiracy to commit murder where only evidence that could support inference of conspiracy was that defendant and confederates were friends, defendant may have had dispute with victim and defendant and confederates simultaneously shot at victim). Thus, in the absence of any evidence tying the defendant to the drug transaction, we cannot conclude that the evidence was sufficient for the jury to infer that the defendant was associated in the drug trade with Wilson.

Second, the evidence does not support a reasonable inference that the defendant aided Wilson merely by introducing the weapon into the situation. Although the state cites *State* v. *Turner*, 252 Conn. 714, 751 A.2d 372 (2000), in support of this argument, that case is inapposite. In *Turner*, our Supreme Court concluded that there was sufficient evidence to establish that the defendant had the requisite intent to kill the victim, as required for a conviction of murder as an accessory. Id., 747. Our Supreme Court stated that the jury reasonably could have found that the defendant aided the principal because on the night of the shooting, the defendant began " 'dancing around' " on the street corner opposite from the victim. Id., 749. Our Supreme Court then stated that the jury reasonably could have concluded that the defendant's unusual behavior was "meant to distract the victim and bystanders while [the principal] approached from behind to shoot the victim." Id. In the present case, the defendant did not provide any assistance to the principal. Although the defendant pointed a gun at the victim and then struggled for control of the weapon, this conduct alone does not support a reasonable inference that he, by so acting, intentionally aided the principal in killing the victim.

In addition, our Supreme Court in *Turner* stated that the jury reasonably could have inferred that the defendant gave the principal the weapon used in the shooting. A witness testified in *Turner* that the shooter used a

weapon of the same type that had been in the defendant's possession a week before the shooting. Id., 749–50. Here, the gun that the defendant pointed at the victim was the same gun that Wilson used to shoot the victim. There is no evidence, however, that would support a reasonable inference that the defendant gave the weapon to Wilson. Unlike in *Turner*, where the defendant gave the principal the weapon in advance of the crime, in this case the most the evidence suggests is that Wilson acquired the weapon in the midst of the struggle between the victim and the defendant. See *State* v. *Green*, supra, 261 Conn. 671–73; *State* v. *Cobbs*, 203 Conn. 4, 13, 522 A.2d 1229 (1987) (evidence insufficient to sustain conviction of felony murder where no witness claimed to have seen defendant commit any crime, no knife was recovered from defendant and no proceeds of underlying robbery were discovered on defendant); compare *State* v. *Foster*, 202 Conn. 520, 536, 522 A.2d 277 (1987) (evidence sufficient to convict defendant of criminally negligent homicide as accessory where defendant intentionally aided principal by giving him knife); *State* v. *Harris*, 49 Conn. App. 121, 131–32, 714 A.2d 12 (1998) (evidence sufficient to sustain conviction of manslaughter as accessory where defendant was gang leader, defendant gave weapon to gang member and directed him to shoot victim). Thus, we conclude that there was insufficient evidence that the defendant intentionally aided Wilson in shooting the victim.

We recognize that "it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Na'im B.*, 288 Conn. 290, 296, 952 A.2d 755 (2008). "The rule is that

the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be *reasonable and logical.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Coleman*, 304 Conn. 161, 169, 37 A.3d 713 (2012). Applying this rule, we conclude that the jury could not have inferred reasonably and logically that there was sufficient evidence to convict the defendant of manslaughter in the first degree with a firearm as an accessory.[6]

The judgment is reversed with respect to the defendant's conviction of manslaughter in the first degree with a firearm as an accessory and with respect to the sentence enhancement pursuant to § 53-202k, and the case is remanded with direction to render judgment of acquittal on that charge and to resentence the defendant on the remaining charges; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

[6] We note that because we must reverse the defendant's conviction of manslaughter, we must also vacate the sentence enhancement which the court imposed pursuant to § 53-202k, because the defendant's conviction of criminal possession of a firearm in violation of § 53a-217, a class D felony, and carrying a pistol without a permit in violation of § 29-35 (a), do not constitute A, B or C felonies as required by § 53-202k.