STATE OF CONNECTICUT *v.* CHARLES GREEN
(SC 16544)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued May 22—officially released September 10, 2002

*Kent Drager*, senior assistant public defender, for the appellant-appellee (defendant).

*Denise B. Smoker*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Elpedio Vitale*, senior assistant state's attorney, for the appellee-appellant (state).

*Opinion*

PALMER, J. A jury found the defendant, Charles Green, guilty of murder as an accessory in violation of General Statutes §§ 53a-54a[1] and 53a-8,[2] conspiracy to commit murder in violation of General Statutes §§ 53a-54a and 53a-48,[3] and criminal possession of a pistol or revolver in violation of General Statutes (Rev. to 1995) § 53a-217c.[4] The trial court rendered judgment in accor-

[1] General Statutes § 53a-54a provides in relevant part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

[2] General Statutes § 53a-8 provides in relevant part: "(a) A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender. . . ."

[3] General Statutes § 53a-48 provides in relevant part: "(a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy. . . ."

[4] General Statutes (Rev. to 1995) § 53a-217c (a) provides: "A person is guilty of criminal possession of a pistol or revolver when he possesses a pistol or revolver, as defined in section 29-27, and (1) has been convicted of a felony or of a violation of subsection (c) of section 21a-279, section 53a-58, 53a-61, 53a-61a, 53a-62, 53a-63, 53a-96, 53a-175, 53a-176, 53a-178 or 53a-181d, (2) has been discharged from custody within the preceding twenty years after having been found not guilty of a crime by reason of mental disease or defect pursuant to section 53a-13, (3) has been confined in a hospital for mental illness, as defined in section 17a-495, within the preceding twelve months by order of a probate court, (4) knows that he is subject to a restraining or protective order issued by a court, after notice and an

dance with the jury verdict,[5] from which the defendant appealed to the Appellate Court. The Appellate Court reversed in part the trial court's judgment, upholding the defendant's convictions of murder as an accessory and criminal possession of a pistol or revolver, but setting aside his conviction of conspiracy to commit murder on the ground of insufficient evidence.[6] See *State* v. *Green*, 62 Conn. App. 217, 247–48, 774 A.2d 157 (2001). On appeal to this court upon our granting of certification, the defendant contends, inter alia, that he was deprived of his constitutional right to confrontation[7] when the trial court instructed the jury that, for

opportunity to be heard has been provided to such person, in a case involving the use, attempted use or threatened use of physical force against another person, or (5) is an alien illegally or unlawfully in the United States. For purposes of this section, 'convicted' means having a judgment of conviction entered by a court of competent jurisdiction."

[5] The trial court sentenced the defendant to a term of thirty years imprisonment on the charge of murder as an accessory, a concurrent term of twenty years imprisonment on the charge of conspiracy to commit murder, and a consecutive term of five years imprisonment on the charge of criminal possession of a pistol or revolver, for a total effective sentence of thirty-five years imprisonment.

[6] On appeal to the Appellate Court, the defendant made the following claims: "(1) [T]he evidence was insufficient to establish his guilt of conspiracy to commit murder and murder as an accessory, (2) the court improperly instructed the jury not to consider the effect that smoking marijuana had on an eyewitness to the crime when the eyewitness admitted to smoking five marijuana cigarettes prior to making his observations, (3) the court improperly allowed the state to present evidence of an alleged prior crime, (4) the court improperly instructed the jury on the burden of proof beyond a reasonable doubt and (5) the court improperly allowed the state to exercise a peremptory challenge against a prospective juror, who was black, when the state's reason for excusing the prospective juror was insufficient and pretextual." *State* v. *Green*, 62 Conn. App. 217, 218–19, 774 A.2d 157 (2001).

[7] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

Although the defendant also refers to his right to confrontation under article first, § 8, of the Connecticut constitution, he has failed to explain why he is entitled to any greater protection under the confrontation clause of the state constitution than he is under the analogous provisions of the federal constitution. We therefore limit our review to the defendant's federal

purposes of evaluating the credibility of a key state's witness, Leroy Townsend, it was not to consider the fact that Townsend had been smoking marijuana on the night of the offense.[8] *State* v. *Green*, 256 Conn. 927, 928, 776 A.2d 1147 (2001). We also granted the state's petition for certification to appeal limited to the issue of whether the Appellate Court properly concluded that there was insufficient evidence to support the jury's verdict of guilty of the charge of conspiracy to commit murder. *State* v. *Green*, 256 Conn. 928, 776 A.2d 1148 (2001). With respect to the defendant's appeal, we conclude that, although the trial court's instruction not to consider the evidence of Townsend's marijuana use was improper, that impropriety was not of constitutional magnitude. With respect to the state's appeal, we conclude that the Appellate Court properly determined that the evidence adduced at trial was insufficient to support the defendant's conviction of conspiracy to commit murder. Accordingly, we affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following facts that the jury reasonably could have found. "Tyrese Jenkins, Hopeton Wiggan, David D., Kenny Cloud and Brucie B.[9] were members of a gang [known as the Island Brothers] named after a housing [complex] located in the Fair Haven section of New Haven. On October 7, 1996, at approximately 11:15 p.m.,

constitutional claim. See, e.g., *State* v. *Eady*, 249 Conn. 431, 435 n.6, 733 A.2d 112, cert. denied, 528 U.S. 1030, 120 S. Ct. 551, 145 L. Ed. 2d 428 (1999).

[8] We note that the primary question that we certified for consideration on appeal is cast in broader terms than the claim that the defendant has raised and analyzed in his brief to this court. See *State* v. *Green*, 256 Conn. 927, 928, 776 A.2d 1147 (2001) (granting certification on issue of whether Appellate Court properly concluded that trial court's instruction "was proper"). Because the defendant limited his analysis in his to brief to the issue of whether the challenged jury instruction violated his constitutional right to confrontation, however, we address that issue only.

[9] The record does not reveal the surnames of David D. and Bruce B.

[Jenkins, Wiggan, David D., Cloud and Brucie B.] went to [another] housing [complex], also located in New Haven and referred to as 'the ghetto,' to settle [an apparent] dispute with the defendant [and some of his companions] . . . .

"Cloud stayed in the car, while Jenkins, Wiggan, David D. and Brucie B., with guns at their sides, went looking for the defendant. The four men entered the housing [complex] through a hole in a fence and, as they approached, they noticed the defendant along with three others, namely, Duane Clark, [Bobby Cook] and Ryan Baldwin, standing and talking near a green electrical box. When the defendant and the others saw the gang members approaching, Clark exclaimed, 'Shoot the motherfucker,' and a gunfight ensued.

"When the first shots were fired, Wiggan and Brucie B. ran for cover behind a dumpster. Jenkins ran diagonally across a parking lot located in the [housing] complex. Both sides exchanged a barrage of gunfire. As Wiggan, Brucie B. and Jenkins retreated from the complex, Jenkins was shot in the leg. Jenkins hobbled quickly away . . . but another bullet struck him and he collapsed. Wiggan and Brucie B. went back into the complex and found Jenkins sitting up against a wall. [Wiggan and Brucie B.] picked up Jenkins and carried him to the car. Cloud, David D., Brucie B. and Wiggan took Jenkins to Yale-New Haven Hospital, where he died from his injuries.

"Leroy Townsend . . . witnessed the beginning of the disturbance as he stood near the electrical box, smoking marijuana.[10] At trial, Townsend testified that he had heard Clark say, 'Shoot the motherfucker,' and that he saw the defendant shoot Jenkins.

---

[10] "Townsend testified that he had smoked five marijuana cigarettes that evening in a relatively short time span." *State* v. *Green*, supra, 62 Conn. App. 220 n.4.

"Arkady Katsnelson, a forensic pathologist [and medical examiner for the state], performed an autopsy on [Jenkins]. Katsnelson testified that Jenkins suffered two bullet wounds, one of which was fatal. One bullet . . . entered the lower front portion of Jenkins' right leg and exited through the back of it. The other bullet, a .44 caliber . . . which caused the fatal wound, entered through the upper right side of Jenkins' chest just below his collarbone and then penetrated the chest wall, the right lung, the heart, the diaphragm, part of the liver, [and] the organs of the abdomen and eventually lodged in some soft tissue located in his abdominal cavity." *State* v. *Green*, supra, 62 Conn. App. 219–20.

The defendant was tried together with Clark, who was charged with murder, conspiracy to commit murder and criminal possession of a pistol or revolver. At the conclusion of the evidentiary portion of their joint trial, and after closing arguments, the court, sua sponte, instructed the jury that it was not to consider any "testimony that . . . Townsend smoked marijuana the night of the shooting" because "[t]here [was] no evidence as to what effect it had on him. Because there [was] no such evidence you must not speculate that he was or was not affected by it or how he was affected by it." After the trial court finished instructing the jury, Clark objected to, inter alia, the court's instructions concerning Townsend's marijuana use on the night of the shooting; the defendant did not object to those instructions, however. The trial court overruled Clark's objection and, thereafter, the jury found the defendant guilty of murder as an accessory, conspiracy to commit murder and criminal possession of a pistol or revolver. The jury found Clark guilty of criminal possession of a pistol or revolver but not guilty of murder and conspiracy to commit murder.[11]

---

[11] With respect to Clark, the trial court rendered judgment in accordance with the jury's verdict of guilty of criminal possession of a pistol or revolver. Clark appealed to the Appellate Court, which affirmed. *State* v. *Clark*, 62

On appeal to the Appellate Court, the defendant claimed, inter alia, that: (1) the trial court improperly had instructed the jury not to consider Townsend's testimony that he had been smoking marijuana on the evening of the crime; and (2) the evidence was insufficient to support his conviction of conspiracy to commit murder. Id., 218–19. The Appellate Court concluded that the defendant was not entitled to review of his first claim because he had failed to object at trial to the allegedly improper instruction and had failed to establish on appeal, pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[12] that the claimed impropriety was of constitutional magnitude.[13] See

Conn. App. 182, 211, 774 A.2d 183 (2001). We granted Clark's petition for certification to appeal to this court, limited to the following issues. First, "[d]id the Appellate Court properly conclude that the trial court's instruction, limiting the jury's use of the evidence regarding the effect of . . . Townsend's use of marijuana on his credibility, was proper?" *State* v. *Clark*, 256 Conn. 905, 772 A.2d 597 (2001). Second, "[i]f the answer to the first question is 'no,' was the error harmless?" Id. We concluded, contrary to the determination of the Appellate Court, that the challenged instruction, although not constitutionally infirm, nevertheless was improper. See *State* v. *Clark*, 260 Conn. 813, 826, 830, 801 A.2d 718 (2002). We also concluded, however, that the error was harmless. See id., 830–31. We therefore affirmed the judgment of the Appellate Court affirming the trial court's judgment of conviction. Id., 831.

[12] In *Golding*, this court held that a defendant "can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[13] In a dissenting opinion, Chief Judge Lavery concluded that the trial court's instruction was improper and that it had violated the defendant's constitutional right to confrontation. *State* v. *Green*, supra, 62 Conn. App. 253–54. Thus, on the basis of Chief Judge Lavery's conclusions, the defendant was entitled to prevail on his ostensibly unpreserved claim under *Golding*. Id., 255; see *State* v. *Golding*, supra, 213 Conn. 239–40. Chief Judge Lavery also expressed the view that the defendant's claim of instructional impropri-

*State* v. *Green*, supra, 62 Conn. App. 228, 231. With respect to the defendant's second claim, however, the Appellate Court concluded that the evidence was insufficient to prove that the defendant had conspired to murder Jenkins and, therefore, reversed in part the trial court's judgment and remanded the case with direction to render a judgment of acquittal with respect to the charge of conspiracy to commit murder. Id., 224, 247–48.

On appeal to this court, the defendant renews his claim that he is entitled to a new trial because the trial court improperly instructed the jury not to consider the effect of Townsend's marijuana use in weighing Townsend's credibility in violation of the defendant's right to confrontation. The state contends in its appeal that, contrary to the conclusion of the Appellate Court, the evidence was sufficient to support the jury's verdict of guilty of conspiracy to commit murder. We address the defendant's claim and the state's claim in turn.

I

The following additional facts and procedural history, which are set forth in this court's opinion in *State* v. *Clark*, 260 Conn. 813, 801 A.2d 718 (2002); are necessary to our resolution of the defendant's claim. "At trial, the state presented the testimony of its key witness, Townsend, a local man who was standing near the site of the shooting, smoking marijuana, when he witnessed the beginning of the disturbance. Townsend testified that he had seen [Clark and the defendant] at the scene, that [they each] had a pistol and that, immediately prior to the [exchange of gunfire, Clark] had said [in the presence of the defendant], 'Shoot the motherfucker.'

"Townsend's credibility was attacked . . . in a variety of ways. He admitted that he had not come forward

ety, in fact, had been preserved adequately by virtue of Clark's timely objection to the instruction. *State* v. *Green*, supra, 248–49.

with his story until several weeks after the shooting when officers from the New Haven police department arrested him for a traffic violation. He also admitted to having three felony convictions on his record. Townsend testified that on the night of the shooting, he [had gone] to the housing [complex at which Jenkins was shot] to purchase marijuana, although [he also testified] that he went there with the marijuana already in his pocket. He testified that at some point he purchased six bags of 'weed,' although he was unable to remember where he had purchased it. Townsend acknowledged that, shortly before the shooting, he had smoked five marijuana cigarettes, with perhaps a ten or fifteen minute interlude between each cigarette. During his interview with the police, however, Townsend placed himself at the scene for only approximately fifteen minutes prior to the shooting. These inconsistencies aside, [neither Clark nor the defendant inquired about] the effect that the marijuana had on Townsend's ability to perceive or to recall the events on the night of the shooting.

"Additionally, [Townsend was] cross-examined . . . regarding the following inconsistencies in his story. Townsend admitted that, although he previously had testified that he had observed Jenkins get shot, he actually did not witness the shooting because he had run from the scene as soon as the shots were fired. He told the police that he had seen the defendant arguing with [Jenkins] just before the shooting, but then testified that he had not seen any such argument and only heard about it later. Townsend also had told the police that the shooting took place in a certain tunnel in the housing [complex], but later testified that it took place on the street. Moreover, Townsend's testimony was inconsistent on the issue of whether [Jenkins] and his friends were armed, sometimes [testifying] that they had guns and, at other times, testifying that they did not. Finally,

Sherry Heyward, Townsend's second cousin, testified that she had known Townsend for twenty-five years, had lived with him on occasion, and that he was a 'pathological liar.'

"At the close of evidence, the trial court provided standard instructions regarding the credibility of witnesses and eyewitness identification testimony. . . . [W]ith regard to Townsend's testimony [specifically], the court provided the following instructions to the jury: 'In weighing the credibility of . . . Townsend, you may consider the fact that he was convicted of one felony in 1986 and two felonies in 1994, and give such weight to those facts which you decide is fair and reasonable in weighing the credibility of his testimony in court and the statement he gave to the police which is taped and marked as [an] exhibit . . . . Also, in weighing the credibility of . . . Townsend, you may consider the testimony of . . . Heyward concerning her opinion that . . . Townsend is a pathological liar and give such weight to that opinion which you decide is fair and reasonable in weighing his credibility.' Nevertheless, earlier in its charge to the jury, the trial court stated: '[Y]ou have heard testimony that . . . Townsend smoked marijuana the night of the shooting. There is no evidence as to what effect it had on him. Because there is no such evidence, you must not speculate that he was or was not affected by it or how he was affected by it.' " Id., 816–19.

The defendant contends that his constitutional right to confrontation was violated when the trial court instructed the jury not to consider the effect of Townsend's marijuana use in weighing Townsend's credibility[14] and, further, that the state cannot establish that

_____

[14] The defendant also claims that he was deprived of his right to have the jury assess Townsend's credibility in violation of his right to a jury trial. It is the confrontation clause and its guarantee of cross-examination, however, that secure a defendant's right to expose facts from which a jury may evaluate a witness' credibility. See, e.g., *State* v. *Ferguson*, 260 Conn. 339,

the constitutional violation was harmless beyond a reasonable doubt.[15] The defendant contends, therefore, that he is entitled to a new trial.[16] We conclude that the defendant cannot prevail on his claim of instructional impropriety inasmuch as he has failed to demonstrate a constitutional violation and, consequently, has failed to satisfy the third prong of *Golding*. See footnote 12 of this opinion.

In *Clark*, we addressed and rejected an identical claim that Clark, the defendant's codefendant, raised on appeal to this court.[17] See *State* v. *Clark*, supra,

350, 796 A.2d 1118 (2002). Even if we were to assume, arguendo, that the defendant's claim of instructional impropriety somehow implicates the defendant's right to a jury trial, the defendant has provided no reason, and we are aware of none, as to why our analysis of that claim would be any different from our analysis of his confrontation clause claim. Accordingly, we do not undertake a separate analysis of the defendant's jury trial claim.

[15] As with other constitutional violations that are subject to harmless error analysis, the state has the burden of demonstrating that the constitutional violation was harmless beyond a reasonable doubt. See, e.g., *State* v. *Kaddah*, 250 Conn. 563, 570–71, 736 A.2d 902 (1999); *State* v. *Webb*, 238 Conn. 389, 482, 680 A.2d 147 (1996).

[16] The defendant maintains that his constitutional claim adequately was preserved by virtue of Clark's objection to the challenged instruction. See *State* v. *Pelletier*, 196 Conn. 32, 34, 490 A.2d 515 (1985) (indicating, in dictum, that objection by "codefendant adequately alerted the trial court to the possibility of error in a timely fashion"). Although the defendant's claim of adequate preservation is questionable in light of his failure to object to the instruction that he now challenges on appeal; see, e.g., *State* v. *Gould*, 241 Conn. 1, 9 n.3, 695 A.2d 1022 (1997) (noting that, notwithstanding *Pelletier*, "[w]hen a defendant does not join a codefendant's motion for tactical or other reasons, the defendant cannot [challenge the alleged impropriety] on appeal"); we need not address his claim of adequate preservation inasmuch as his claim of instructional impropriety meets the first two prongs of *Golding*. See footnote 12 of this opinion. Therefore, the defendant is entitled to review of his constitutional claim under *Golding*.

[17] Clark argued alternatively that the trial court's instructional impropriety entitled him to a new trial even if the impropriety did not rise to the level of a constitutional violation. See *State* v. *Clark*, supra, 260 Conn. 830. We rejected that claim, concluding that Clark had failed to demonstrate harm under the standard for establishing the harmfulness of nonconstitutional errors. Id. As we have indicated, the defendant claims only that the chal-

260 Conn. 830. In *Clark*, we determined that the same instruction that the defendant in the present case challenges was improper because the jury was entitled to consider the effect of Townsend's marijuana use on his credibility.[18] Id., 820; see also id., 824–26. We nevertheless concluded that the instructional impropriety was not of constitutional magnitude; id., 830; "consider[ing] the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial."[19] (Internal quotation marks omitted.) Id., 828.

We reached that conclusion essentially for two reasons. First, the trial court otherwise had afforded Clark broad latitude to cross-examine Townsend, who effectively was impeached by the numerous inconsistencies in his testimony, his prior felony convictions and his motive for testifying falsely. See id., 828–29. In addition, Townsend's cousin, Heyward, who had known Townsend for twenty-five years, characterized him as a patho-

lenged instruction was constitutionally infirm and not harmless beyond a reasonable doubt. See footnote 8 of this opinion.

[18] As we explained in *Clark*, "[w]e recognize that, because it is an illegal substance, it may be that many jurors may have no firsthand knowledge regarding the effects of marijuana on one's ability to perceive and to relate events. At the same time, we cannot blink at the reality that, despite its illegality, because of its widespread use, many people know of the potential effects of marijuana, either through personal experience or through the experience of family members or friends. The ability to draw inferences about the impairing effects of marijuana, like alcohol, however, is based upon common knowledge, experience and common sense, not necessarily on personal experience. . . . The unfortunate prevalence of marijuana use, coupled with the substantial effort to educate all segments of the public regarding its dangers, underscores the reality that the likely effects of smoking five marijuana cigarettes in a short period of time before an incident are within the ken of the average juror." (Citations omitted.) *State* v. *Clark*, supra, 260 Conn. 824–25.

[19] In *Clark*, we further concluded that the instructional impropriety was harmless. *State* v. *Clark*, supra, 260 Conn. 830–31.

logical liar. Id., 828. Thus, Townsend's credibility was the subject of a sustained, vigorous and multifaceted attack by Clark and, consequently, Townsend's reliability as a witness was undermined substantially. See id., 829.

Second, Clark did not seek to establish that Townsend's drug use so impaired his ability to perceive as to render Townsend's perception and recollection of the events unreliable. Id., 829–30. Rather, Clark sought to use Townsend's testimony regarding marijuana use merely to indicate other inconsistencies in Townsend's testimony, presumably in order to convince the jury that Townsend was *lying* about Clark's involvement in the crime. Id. Consequently, we determined that Clark's use of Townsend's testimony concerning the use of marijuana "added little to discredit Townsend's testimony beyond what had been established by the other inconsistencies developed through [Clark's] thorough and effective cross-examination." Id., 830.

A careful review of the record in the present case reveals that our rejection of Clark's claim of a constitutional violation is equally applicable to the present appeal. The defendant and Clark aggressively attacked Townsend's credibility on numerous fronts and the defendant, like Clark, never seriously contested Townsend's ability to perceive accurately the events culminating in the fatal shooting but, rather, sought to demonstrate that Townsend was lying about the defendant's involvement in the crime. Accordingly, for the reasons that we articulated in *Clark*; id., 828–30; we conclude that the defendant has failed to establish that he was deprived of his constitutional right to confrontation when the trial court improperly instructed the jury not to consider the effect of Townsend's marijuana use in weighing Townsend's credibility.

## II

We next address the state's contention that the Appellate Court improperly determined that the evidence was insufficient to support the defendant's conviction of conspiracy to commit murder. We reject the state's claim.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Niemeyer*, 258 Conn. 510, 517, 782 A.2d 658 (2001).

"While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Newsome*, 238 Conn. 588, 617, 682 A.2d 972 (1996).

"[I]t is a function of the jury to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

Because [t]he only kind of an inference recognized by the law is a reasonable one . . . any such inference cannot be based on possibilities, surmise or conjecture. . . . It is axiomatic, therefore, that [a]ny [inference] drawn must be rational and founded upon the evidence. . . . However, [t]he line between permissible inference and impermissible speculation is not always easy to discern. When we infer, we derive a conclusion from proven facts because such considerations as experience, or history, or science have demonstrated that there is a likely correlation between those facts and the conclusion. If that correlation is sufficiently compelling, the inference is reasonable. But if the correlation between the facts and the conclusion is slight, or if a different conclusion is more closely correlated with the facts than the chosen conclusion, the inference is less reasonable. At some point, the link between the facts and the conclusion becomes so tenuous that we call it speculation. When that point is reached is, frankly, a matter of judgment. . . .

"Thus, in determining whether the evidence supports a particular inference, we ask whether that inference is so unreasonable as to be unjustifiable. . . . In other words, an inference need not be compelled by the evidence; rather, the evidence need only be reasonably susceptible of such an inference. Equally well established is our holding that a jury may draw factual inferences on the basis of already inferred facts. . . . Moreover, [i]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of inno-

cence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Niemeyer*, supra, 258 Conn. 518–19.

In addition, "[b]ecause the defendant was convicted of conspiracy to commit murder, we . . . must consider the essential elements of the crime of conspiracy. To establish the crime of conspiracy [to commit murder . . . the state must show] that an agreement was made between two or more persons to engage in conduct constituting [the crime of murder] and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. . . . While the state must prove an agreement [to commit murder], the existence of a formal agreement between the conspirators need not be proved because [i]t is only in rare instances that conspiracy may be established by proof of an express agreement to unite to accomplish an unlawful purpose. . . . [T]he requisite agreement or confederation may be inferred from proof of the separate acts of the individuals accused as coconspirators and from the circumstances surrounding the commission of these acts. . . . Further, [c]onspiracy can seldom be proved by direct evidence. It may be inferred from the activities of the accused persons." (Internal quotation marks omitted.) *State* v. *Torres*, 242 Conn. 485, 491–92, 698 A.2d 898 (1997). Application of the foregoing principles to the facts adduced at trial in the present case leads us to conclude, in accordance with the determination of the Appellate Court; *State* v. *Green*, supra, 62 Conn. App. 224; that the evidence was insuffi-

cient to establish that the defendant had conspired with one or more persons to murder Jenkins.

We begin our review of the state's claim by noting, as the state concedes, that the jury could not have found that the defendant conspired with Clark to commit murder because Clark was acquitted of conspiracy to commit murder by the same jury that convicted the defendant of that offense.[20] We therefore review the

---

[20] In *State v. Robinson*, 213 Conn. 243, 253, 567 A.2d 1173 (1989), we held that, *as a matter of law, a defendant cannot be found guilty of conspiracy to commit a crime with an alleged coconspirator who has been acquitted of conspiracy charges stemming from the same crime, even when the two alleged coconspirators have been tried separately.* In *State v. Colon*, 257 Conn. 587, 778 A.2d 875 (2001), however, "[w]e reject[ed] the rule established in *Robinson* that one conspirator cannot be convicted when his . . . alleged coconspirator is acquitted *in a separate proceeding*." (Emphasis added.) Id., 603. As we explained in *Colon*, "[w]hen coconspirators are tried separately, the acquittal of one on charges of conspiracy should not dictate the acquittal of the other simply because the state in one case has failed to prove an element necessary to a conspiracy charge. `. . . The acquittal of a codefendant in a separate trial could . . . [result] from a multiplicity of factors completely unrelated to the actual existence of a conspiracy . . . for example, certain evidentiary issues that might render evidence inadmissible in one trial but not in another. . . . In separate trials, [t]he evidence presented to the juries and the manner in which that evidence is presented may be significantly different and certainly will never be identical. . . . As a result, [d]ifferent juries may rationally come to different conclusions, especially when differing evidence is presented. . . .

"An . . . unsuccessful prosecution of an alleged coconspirator in a separate trial means nothing more than that on a given date the prosecution failed to meet its burden of proving the defendant guilty beyond a reasonable doubt of all of the elements constituting conspiracy. It certainly does not mean . . . that a conspiracy did not occur. It has long been recognized that criminal juries in the United States are free to render not guilty verdicts resulting from compromise, confusion, mistake, leniency or other legally and logically irrelevant factors." (Citations omitted; internal quotation marks omitted.) Id., 602–603. This rationale does not apply, however, in a case such as the present one, in which the same jury convicts one alleged conspirator of conspiracy to commit an offense and acquits the other of the same charge. In such circumstances, the jury has indicated by its verdict that the evidence adduced at the joint trial was insufficient to establish a conspiracy between the defendant who was convicted of conspiracy and the codefendant who was not.

evidence to determine whether the jury reasonably could have found that the defendant conspired with Cook or Baldwin or both to murder Jenkins.

As the Appellate Court noted, the record is devoid of any evidence indicating that the defendant and Cook or Baldwin had entered into a prearranged plan to kill Jenkins. Id. Indeed, there simply was no evidence to establish that either Cook or Baldwin knew about any dispute between Jenkins' gang, the Island Brothers, and the defendant, and there is nothing in the record from which the jury could have inferred that the defendant and Cook or Baldwin had agreed to kill Jenkins prior to the arrival of Jenkins and his fellow gang members at the "ghetto" housing complex where the defendant, Clark, Cook and Baldwin were assembled.

Moreover, the evidence was insufficient to establish that the defendant and Cook or Baldwin had agreed to kill Jenkins upon Jenkins' arrival at the "ghetto" housing complex. The testimony adduced at trial indicated only that the defendant, Cook and Baldwin simultaneously reached for their guns, apparently in response to Clark's statement, "shoot the motherfucker," when Jenkins and his cohorts approached while wielding their guns. A conspiracy can be formed in a very short time period and, consequently, the evidence arguably supported a finding that the defendant had agreed with *Clark* to shoot Jenkins and his fellow gang members.[21] As we have indicated, however, the jury found Clark not guilty of conspiracy to commit murder. Such a finding compels us to conclude that the jury rejected the state's claim that the defendant had conspired with Clark to kill Jenkins.

---

[21] An unspoken or tacit agreement between the defendant and Clark to kill Jenkins arguably could be inferred from the fact that the defendant shot at Jenkins and others after having been instructed by Clark to "shoot the motherfucker."

On appeal, the state claims that the defendant and his companions were members of a gang. According to the state, the jury reasonably could have inferred that Cook and Baldwin, as members of the same gang as the defendant, knew of a dispute between the defendant's alleged gang and Jenkins' rival gang, and further, that Cook, Baldwin and the defendant had agreed, explicitly or otherwise, to kill Jenkins and his fellow gang members. We reject the state's argument. First, although there was ample evidence in the record to establish that Jenkins and his cohorts were members of a gang, namely, the Island Brothers, the only evidence regarding the relationship among the defendant, Clark, Cook and Baldwin suggested that they were friends who associated with each other in the "ghetto" housing complex.[22] Second, although there was ample evidence that Jenkins and his companions went to the "ghetto" housing complex with the intent to settle a dispute, there was no evidence, contrary to the state's suggestion, that the defendant and his companions knew that Jenkins and his fellow gang members were approaching with that intent, or that the defendant and his companions were awaiting the arrival of Jenkins and his fellow gang members. Thus, the only evidence in the record that reasonably could be construed to support an inference that the defendant and Cook or Baldwin conspired to kill Jenkins establishes that: (1) the defendant, Cook and Baldwin were friends; (2) the defendant may have had a dispute with certain members of the Island Brothers gang, including Jenkins; and (3) the defendant, Cook and Baldwin simultaneously drew their guns and started shooting as Jenkins and his fellow gang members approached, apparently in response to Clark's instruc-

[22] Although the opinion of the Appellate Court refers to the defendant and his companions as "members of a rival gang"; *State* v. *Green,* supra, 62 Conn. App. 219; our examination of the record reveals that the evidence was insufficient to warrant an inference that the defendant and his companions were members of a gang.

tion to "shoot the motherfucker." We conclude that this evidence simply constitutes too weak a foundation upon which to base an inference of an agreement, however swiftly formed, to kill Jenkins.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.