# CHARLES GREEN *v.* COMMISSIONER OF CORRECTION
## (AC 29040)

Lavine, Beach and Alvord, Js.

Argued November 19, 2009—officially released February 16, 2010

*Paul R. Kraus,* special public defender, for the appellant (petitioner).

*Bruce R. Lockwood,* senior assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Linda N. Howe,* former senior assistant state's attorney, for the appellee (respondent).

*Opinion*

ALVORD, J. The petitioner, Charles Green, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly concluded that he was not deprived of the effective assistance of trial counsel. We affirm the judgment of the habeas court.

The record reveals the following relevant facts and procedural history. Following a 1998 jury trial, the petitioner was convicted of murder as an accessory, conspiracy to commit murder and criminal possession of a pistol or revolver. Following a direct appeal, this court reversed in part the trial court's judgment, upholding the petitioner's conviction of murder as an accessory and criminal possession of a pistol or revolver but setting aside his conviction of conspiracy to commit murder on the ground of insufficient evidence. *State* v. *Green,* 62 Conn. App. 217, 247–48, 774 A.2d 157 (2001). Our Supreme Court granted certification to appeal and affirmed the judgment of this court. *State* v. *Green,* 261 Conn. 653, 804 A.2d 810 (2002).

The Supreme Court, quoting from the opinion of the Appellate Court, set forth the following facts that the jury reasonably could have found. "Tyrese Jenkins, Hopeton Wiggan, David D., Kenny Cloud and Brucie B.[1] were members of a gang [known as the Island Brothers] named after a housing [complex] located in the Fair Haven section of New Haven. On October 7, 1996, at approximately 11:15 p.m., [Jenkins, Wiggan, David D., Cloud and Brucie B.] went to [another] housing [complex], also located in New Haven and referred to as the ghetto, to settle [an apparent] dispute with the [petitioner] [and some of his companions] . . . .

"Cloud stayed in the car, while Jenkins, Wiggan, David D. and Brucie B., with guns at their sides, went looking for the [petitioner]. The four men entered the housing [complex] through a hole in a fence and, as they approached, they noticed the [petitioner] along with three others, namely, Duane Clark, [Bobby Cook] and Ryan Baldwin, standing and talking near a green electrical box. When the [petitioner] and the others saw the gang members approaching, Clark exclaimed, Shoot the motherfucker, and a gunfight ensued.

"When the first shots were fired, Wiggan and Brucie B. ran for cover behind a dumpster. Jenkins ran diagonally across a parking lot located in the [housing] complex. Both sides exchanged a barrage of gunfire. As Wiggan, Brucie B. and Jenkins retreated from the complex, Jenkins was shot in the leg. Jenkins hobbled quickly away . . . but another bullet struck him and he collapsed. Wiggan and Brucie B. went back into the complex and found Jenkins sitting up against a wall. [Wiggan and Brucie B.] picked up Jenkins and carried him to the car. Cloud, David D., Brucie B. and Wiggan took Jenkins to Yale-New Haven Hospital, where he died from his injuries.

---

[1] The record does not reveal the surnames of David D. and Brucie B.

"Leroy Townsend . . . witnessed the beginning of the disturbance as he stood near the electrical box, smoking marijuana. At trial, Townsend testified that he had heard Clark say, Shoot the motherfucker, and that he saw the [petitioner] shoot Jenkins." (Internal quotation marks omitted.) Id., 657–58.

On June 6, 2006, the petitioner filed his fifth amended habeas corpus petition, alleging that his trial counsel, Patricia Buck Wolf and Linda Stambovsky, provided ineffective assistance because they (1) failed to raise a claim of self-defense on his behalf, (2) pursued a weak alibi defense at trial, (3) failed to cross-examine Townsend adequately about the effect of his marijuana use on his ability to perceive and to recall the events on the night in question and (4) failed to introduce expert testimony regarding the effect of Townsend's marijuana use on his ability to make accurate observations.[2] The court denied the petition, concluding that the petitioner failed to establish deficient performance with respect to claim three and that he failed to demonstrate that he had been prejudiced by the alleged ineffective assistance set forth in claims one, two and four. After the court granted his petition for certification to appeal, the petitioner filed the present appeal challenging those determinations.[3]

---

[2] Stambovsky was Wolf's associate. For this case, Stambovsky did most of the investigation and interviewed potential defense witnesses. Both counsel attended pretrial conferences, drafted motions and prepared for trial. At trial, Stambovsky usually conducted direct examination of the defense witnesses and Wolf cross-examined the state's witnesses.

[3] On appeal, the petitioner additionally claims that the performance of trial counsel was deficient because they failed to object to the court's charge instructing the jury not to speculate as to the effect of Townsend's use of marijuana on his credibility, and they failed to question Townsend extensively on his three prior felony convictions. Although those claims were raised in his amended habeas petition, the habeas court did not address them, and the petitioner did not file a motion for articulation seeking to have the habeas court address those omissions. Additionally, the petitioner claims that his "prior . . . claims of ineffective assistance cumulatively constitute ineffective assistance of counsel." That claim was not raised in his amended habeas petition.

"Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . .

"In *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction. . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . .

"The first part of the *Strickland* analysis requires the petitioner to establish that . . . counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . .

We decline to consider those additional claims. "[T]his court is not bound to consider any claimed error unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim." (Internal quotation marks omitted.) *Shelton* v. *Commissioner of Correction*, 116 Conn. App. 867, 873, 977 A.2d 714, cert. denied, 293 Conn. 936, 981 A.2d 1080 (2009).

"Turning to the prejudice component of the *Strick-land* test, [i]t is not enough for the [petitioner] to show that the errors [made by counsel] had some conceivable effect on the outcome of the proceeding. . . . Rather, [the petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (Internal quotation marks omitted.) *Necaise* v. *Commissioner of Correction*, 112 Conn. App. 817, 820–21, 964 A.2d 562, cert. denied, 292 Conn. 911, 973 A.2d 660 (2009).

## I

The petitioner's first claim is that the court improperly concluded that the failure of his trial counsel to assert a claim of self-defense at trial did not constitute ineffective assistance. Specifically, he argues that such a defense was supported by the facts of the case[4] and that it would not have been inconsistent with his alibi defense. Because the petitioner was charged as an accessory, and not as the principal, he claims that he did not have to be physically present at the time the shooting took place and that it would not be inconsistent to argue to the jury that he was at the apartment of Latania Baldwin when Jenkins was shot and that the shooter acted in self-defense.

At the habeas trial, Wolf and Stambovsky both testified that the petitioner initially and consistently told

---

[4] The petitioner claims that there was testimony at trial that indicated that the shooting was gang related and that Jenkins and his group were armed and entered "the ghetto" through a hole in the fence late in the evening to settle a dispute with the petitioner. Under those circumstances, the petitioner argues that Jenkins and his group could be considered the initial aggressors because they were visibly armed and were approaching the petitioner and his group. See *State* v. *Carter*, 232 Conn. 537, 546, 656 A.2d 657 (1995).

them that he was watching television with his friend, Ryan Baldwin, in the apartment of Latania Baldwin, Ryan's sister, at the time Jenkins was shot and killed. Her apartment was at the same complex where the shooting occurred, and the petitioner stated that he and the others in the apartment had heard the gunshots. The petitioner told Wolf and Stambovsky that Bobby Cook also could verify his whereabouts that night and that Cook, Latania Baldwin and Ryan Baldwin would be willing to testify on his behalf at trial. Wolf further testified that she believed that the petitioner had a strong alibi defense, that she saw no support from her investigation to make a claim of self-defense and that she thought it would have been confusing to the jury to assert a self-defense claim because it was directly contrary to the petitioner's version of the events. Stambovsky testified that she had interviewed the alibi witnesses and found them to be credible and articulate, that their recitations of the events of that evening were consistent and that she did not believe that the facts supported a claim of self-defense.

In its memorandum of decision, the habeas court concluded that the petitioner failed to prove that there was a reasonable probability that the result of the trial would have been different if a claim of self-defense had been made on his behalf. The court did not address whether trial counsel's failure to raise a claim of self-defense constituted deficient performance because of its determination that the petitioner failed to satisfy the prejudice prong of *Strickland*. We agree with the court's determination.

The petitioner claims that he did not shoot Jenkins but that the shooter would have been entitled to assert a claim of self-defense because Jenkins and his group were visibly armed and were approaching the group in "the ghetto." He argues that if the shooter, as the principal, could not be convicted of murder because

he had a valid self-defense claim, then the petitioner, as an accessory, likewise could not be convicted of that charge. If, as the petitioner claims, he was not present when the shooting occurred, the identity of the shooter is unknown.

"Under General Statutes § 53a-19 (a),[5] a person can, under appropriate circumstances, justifiably exercise repeated deadly force if he reasonably believes both that his attacker is using or about to use deadly force against him and that deadly force is necessary to repel such attack. . . . The Connecticut test for the degree of force in self-defense is a subjective-objective one. The jury must view the situation from the perspective of the defendant. Section 53a-19 (a) requires, however, that the defendant's belief ultimately must be found to be reasonable." (Citation omitted; internal quotation marks omitted.) *State* v. *Carter*, 232 Conn. 537, 546, 656 A.2d 657 (1995). Because the petitioner claims that he is not the shooter, it is the shooter's belief that is at issue. The shooter, however, is unidentified, and there was and could not be any evidence as to what the shooter believed at the time he saw Jenkins and his group approaching the shooter and his group. Accordingly, the habeas court correctly concluded that the petitioner failed to prove that if such a defense had been raised, the result of the trial would have been different.

II

The petitioner next claims that trial counsel rendered ineffective assistance by presenting a weak alibi

---

[5] General Statutes § 53a-19 (a) provides in relevant part: "[A] person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm."

defense. He argues that it was an objectively unreasonable trial strategy to present an alibi defense because two of the alibi witnesses already had refused to testify, invoking their fifth amendment rights against self-incrimination, before Latania Baldwin, the remaining alibi witness, was called to testify. The petitioner argues that trial counsel knew that Latania Baldwin had given a prior inconsistent statement to the police as to his whereabouts on the night in question and that, under those circumstances, the alibi defense was so weak that counsel should not have presented it at trial.

We agree with the habeas court's determination that the petitioner has failed to satisfy the prejudice prong of *Strickland* with respect to this claim. As previously discussed, the petitioner did not have a viable self-defense claim. His alibi defense, initially believed to be a strong one by Wolf and Stambovsky, ultimately proved to be ineffective. Although Latania Baldwin attempted to explain the discrepancy in her statements, the jury obviously did not credit the explanation. Nevertheless, the petitioner has failed to demonstrate that the results of the trial would have been different if no alibi defense had been presented.

### III

The petitioner next claims that his trial counsel rendered ineffective assistance because they failed to cross-examine Townsend adequately about the effect of his marijuana use on his ability to perceive and to recall the events of the evening of October 7, 1996. The petitioner argues that such questioning was essential because Townsend was the only eyewitness who testified that he saw the petitioner shoot Jenkins. Townsend admitted that he had smoked five marijuana cigarettes at the crime scene shortly before the shooting commenced between the two groups. Because there had been no inquiries as to the effect of ingesting this drug,

the trial court had determined that it was appropriate to give an instruction, sua sponte, that the jury was not to speculate as to the effect of the marijuana on Townsend.[6]

At the habeas trial, Wolf testified that she did not question Townsend on the effect of his marijuana smoking because she did not know what his response would have been. She was adamant that "[y]ou never ask a question you don't know the answer to." Wolf testified that she believed it was best to let the jury draw its own conclusions about the marijuana use instead of asking Townsend that question and risking a response from him that he was not impaired. Stambovsky testified that she recollected the jury's reaction to Townsend's testimony about smoking the five marijuana cigarettes and perceived that the jurors were "rather shocked." Given the jurors' reaction, Stambovsky believed that the marijuana use was "damning evidence" and that it would not have been wise to follow-up with a question regarding its effect when trial counsel did not know what Townsend's response would have been. Ultimately, Stambovsky testified that she believed that the jury, relying on its common sense, could draw its own inferences as to the effect of the marijuana use on Townsend's mental state.

In its memorandum of decision, the habeas court concluded that this claim of the petitioner failed because he did not demonstrate that trial counsel's performance was deficient or that he had been prejudiced by the failure to pursue that line of questioning.

---

[6] The petitioner was tried together with Clark, who had been charged with the same offenses as the petitioner. In *State* v. *Clark*, 260 Conn. 813, 820, 824–26, 801 A.2d 718 (2002), our Supreme Court determined that that instruction was improper because the jury was entitled to consider the effect of Townsend's marijuana use on his credibility. Nevertheless, the court concluded that the improper instruction was merely an evidentiary impropriety and harmless. Id., 830.

"There is no evidence before this court establishing what Townsend would have said if he had been cross-examined on the effect of the marijuana on his ability to perceive or to recall the details of the shooting. It is total speculation to assume that his answers would have caused the trial judge not to give the erroneous instruction, or that his answers would have further damaged his credibility,[7] or that his answers would have cured what the petitioner claims was an inadequate factual basis for appellate review.

"Trial counsel made the tactical decision not to cross-examine Townsend on the effect of the marijuana on

---

[7] As noted in *State* v. *Clark*, 260 Conn. 813, 816–17, 801 A.2d 718 (2002), "Townsend's credibility was attacked . . . in a variety of ways. He admitted that he had not come forward with his story until several weeks after the shooting when officers from the New Haven police department arrested him for a traffic violation. He also admitted to having three felony convictions on his record. Townsend testified that on the night of the shooting, he [had gone] to the housing [complex at which Jenkins was shot] to purchase marijuana, although [he also testified] that he went there with the marijuana already in his pocket. He testified that at some point he purchased six bags of 'weed,' although he was unable to remember where he had purchased it. Townsend acknowledged that, shortly before the shooting, he had smoked five marijuana cigarettes, with perhaps a ten or fifteen minute interlude between each cigarette. During his interview with the police, however, Townsend placed himself at the scene for only approximately fifteen minutes prior to the shooting. . . .

"Additionally, [Townsend was] cross-examined . . . regarding the following inconsistencies in his story. Townsend admitted that, although he previously had testified that he had observed Jenkins get shot, he actually did not witness the shooting because he had run from the scene as soon as the shots were fired. He told the police that he had seen the [petitioner] arguing with [Jenkins] just before the shooting, but then testified that he had not seen any such argument and only heard about it later. Townsend also had told the police that the shooting took place in a certain tunnel in the housing [complex], but later testified that it took place on the street. Moreover, Townsend's testimony was inconsistent on the issue of whether [Jenkins] and his friends were armed, sometimes [testifying] that they had guns and, at other times, testifying that they did not. Finally, Sherry Heyward, Townsend's second cousin, testified that she had known Townsend for twenty-five years, had lived with him on occasion, and that he was a 'pathological liar.' "

him, and [Wolf] testified at the habeas trial as to the reasons why she made that decision. This decision is presumed to have been sound trial strategy. The petitioner has failed, under all the circumstances, to overcome that presumption and therefore has failed to prove deficient performance by trial counsel in this regard. In addition, in view of the absence from the record of the evidence that would have been produced if the desired cross-examination had been conducted, the petitioner has failed to prove that he has been prejudiced by the lack of such cross-examination."

We agree with the reasoning of the habeas court and conclude that the petitioner failed to satisfy the performance prong and the prejudice prong of *Strickland*.

## IV

The petitioner's final claim is that his trial counsel rendered ineffective assistance because they failed to engage the services of an expert to testify as to the effect of the marijuana use on Townsend's ability to perceive and to recollect accurately the details of the shooting. In support of that claim, the petitioner offered the testimony of Bruce Rounsaville, a medical doctor and drug abuse researcher, at the habeas trial. In response to the petitioner's hypothetical question describing Townsend's marijuana use, Rounsaville opined that such use would have had a negative impact on that person's perception and memory. Rounsaville further testified that he did not believe that the effect of marijuana on a person's ability to perceive and to recollect was within the common knowledge of the average person.[8]

---

[8] There is case law to the contrary. In *State* v. *Clark*, 260 Conn. 813, 820, 824–25, 801 A.2d 718 (2002), our Supreme Court stated: "The unfortunate prevalence of marijuana use, coupled with the substantial effort to educate all segments of the public regarding its dangers, underscores the reality that the likely effects of smoking five marijuana cigarettes in a short period of time before an incident are within the ken of the average juror."

The habeas court concluded that the petitioner had not established that he was prejudiced by the failure of his trial counsel to present the type of evidence that had been offered by Rounsaville at the habeas proceeding. The court was not persuaded that the result of the trial would have been different. As noted by the court: "It is not necessary in this memorandum to refer to the extensive attack that was made at trial on Townsend's credibility by both the petitioner's trial counsel and Clark's trial counsel. The Supreme Court, in finding that the erroneous instruction of the trial court, in removing from the jury its consideration of the effect on Townsend of his marijuana use was harmless, set forth the evidence which tended to impeach the credibility of Townsend. . . .[9] The petitioner has failed to prove that, had the jury heard the additional evidence of the effect of marijuana use, the totality of the evidence would have been such that Townsend's credibility would have been so impeached that it is reasonably probable that the result of the criminal trial would have been different." (Citations omitted.) We agree with the reasoning of the habeas court and conclude that the petitioner failed to satisfy the prejudice prong of *Strickland.*

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] See footnote 6 of this opinion.